IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALYSSA B. LARSON, individually and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-04210 |
| v. | ) ) | Hon. Amy J. St. Eve |
| LASALLE COUNTY, BRIAN TOWNE, KAREN DONNELLY, and JOHN DOES, State's Attorney Felony Enforcement Officers, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants LaSalle County, Brian Towne, and Karen Donnelly have moved jointly to dismiss Plaintiff Alyssa B. Larson's First Amended Class Action Complaint (the "Complaint") under Rule 12(b)(6). (R. 37.) For the following reasons, the Court grants Defendants' motion to dismiss.

### BACKGROUND

This case concerns LaSalle County's now-disbanded "vigilante police force," as the Complaint calls it. In 2011, former State's Attorney Brian Towne established the State's Attorney Felony Enforcement unit, or "SAFE," to patrol roads and target drug traffickers. Towne staffed SAFE with civilians—mostly former law enforcement—and equipped them with police powers. He did so under a specific state statute, 55 ILCS 5/3-9005(b), which authorizes the State's Attorney to appoint "one or more special investigators to," as it is relevant to this case, "conduct investigations which assist the State's Attorney in performance of his duties."

## I. The Complaint's Allegations

Plaintiff Alyssa B. Larson filed this case on June 2, 2017. (R. 1.) Her Complaint alleges that Towne directed SAFE "to conduct drug interdiction activities" by stopping "suspicious" vehicles on interstates, especially I-80. (R. 28 at ¶ 4.) In carrying out that directive, SAFE used out-of-state license plates as a proxy for suspiciousness. It would stop vehicles with foreign plates as "pretext" for searching them for drugs or drug money. "Within minutes" of such a stop, an officer would walk a drug-sniffing dog around the vehicle. (*Id.* ¶ 5.) This practice led to many instances of drug or drug-money seizures, and "[i]n a number of those cases," SAFE would seize a vehicle's drugs or money without arresting or charging its occupants. (*Id.* ¶ 7.)

Defendants "allocated" the money SAFE seized to a "civil forfeiture fund." (*Id.* ¶ 8.) Some of the money went to travel expenses for law enforcement, including $17,000 per diem payments for Towne and his employees. Elsewhere, the money provided SAFE vehicles, guns, computers, and uniforms. (*Id.*) All told, at Towne's "direction and with his consent," SAFE pulled over hundreds or thousands of cars, arrested "dozens" of people, and "confiscated large amounts of money" from those they stopped—$1.7 million, to be specific. SAFE's arrestees also paid "thousands of dollars of fines." (*Id.* ¶ 2, 8–9.)

Larson alleges that she was a victim of SAFE's practices. Her allegations start with her mother who, though not a party to this suit, SAFE unlawfully stopped in October 2012. A SAFE officer claimed that Larson's mother was speeding, a dog identified drugs, and Larson's mother was arrested for marijuana possession and jailed for 15 months. "Shortly after her mother's arrest," Larson flew to LaSalle County and picked up her mother's impounded car. (*Id.* ¶ 21–22.) Driving from the impound lot wither her grandmother, on I-80, an officer stopped Larson. He told Larson to get out of the car and wrongfully claimed that she had executed an "unsafe

lane change." (*Id.* ¶¶ 25–27.) Larson, in fact, "had not violated any traffic, city, state, or federal law" before the stop. (*Id.* ¶ 28.) "The real reason" the officer pulled her over, according to the Complaint, was that the car had an out-of-state plate. (*Id.* ¶ 30.) The officer placed Larson in his unmarked squad car, and without her consent another officer "r[a]n the car"—meaning, took the drug-sniffing dog around it.

As it so happens, Larson trains police dogs professionally. (*Id.* ¶ 37.) She told the officer in the car with her as much, and began to critique the search. She pointed out the dog's panting, which impacted its ability to smell, and its swipe at her grandmother's ice cream, which suggested it was not trained properly. With the two now chatting, the officer shared with Larson who he was and what he and his fellow officer were doing. They were "part of a team that the State's Attorney had created to stop drug traffickers on I-80," and "the team sits on I-80, looks for vehicles with out-of-state license plates, and stops them the entire day." (*Id.* ¶ 41.) The search concluded, and the Complaint does not allege that the officers seized anything or arrested anyone.

The Complaint claims that at the time of the stop—despite the officer's explanation as to what SAFE was doing, and despite her own experience—Larson did not know and could not have known that SAFE: (1) "was not authorized to conduct traffic stops"; (2) "targeted out-of-state motorists"; or (3) initiated her stop and search "not based upon reasonable suspicion or probable cause, but [ ] pursuant to a prearranged and unlawful plan." (*Id.* ¶ 43.) Larson instead learned that SAFE "lacked authority to make traffic stops" and "was otherwise operating unlawfully" when she spoke with an attorney in May 2017, four and a half years later. (*Id.* ¶¶ 44.) The Complaint is vague about what new information Larson learned in that discussion, but it appears that her lawyer told her about *People v. Ringland*, 33 N.E.3d 1020 (Ill. App. Ct.

3

2015), *aff'd*, 89 N.E.3d 735 (Ill. 2017).

**II.**    ***People v. Ringland***

In *Ringland*, issued on June 3, 2015, the Appellate Court of Illinois, Third District considered the legality of Browne's SAFE program. A defendant, on a consolidated appeal from a trial court's grant of motions to suppress, argued that SAFE's traffic stop "exceeded the scope of section 3-9005(b) rendering the traffic stops and arrests unlawful." *Ringland*, 33 N.E.3d. at 1026. The appellate court agreed. It first cited trial-court testimony showing that Towne established SAFE as a "drug interdiction team" to patrol I-80, that "[b]y prearrangement, the canine unit is automatically brought to any traffic stop called in by a SAFE officer," and that SAFE officers wrote warnings, made arrests, and confiscated money and drugs. *Id.* at 1023–24. The court then turned the scope of Section 3-9005(b).

The appellate court bluntly held, "[w]e cannot fathom how patrolling Interstate 80, issuing warning tickets, and confiscating contraband can be realistically viewed as 'conducting investigations that assist the State's Attorney with his duties.'" *Id.* at 1028. The court added, the prosecution of traffickers "is indisputably a duty of the State's Attorney; outfitting his own drug interdiction unit is not." *Id.* It therefore concluded that the State's Attorney lacks "the authority to equip his investigators with squad cars and ticket books for the purpose of patrolling the highways" and that SAFE officers had thus "exceeded the scope of section 3-9005(b)." *Id.* at 1029. The Illinois Supreme Court affirmed that decision two years later. It decided that, because the State's Attorney's duties at common law permitted the spearheading of an investigation only when law-enforcement agencies could not adequately do so, "the conduct of the SAFE unit fell outside of the scope of section 3-9005(b)." 89 N.E.3d at 746.

In rendering these decisions, neither court commented on the practice of targeting

vehicles with out-of-state tags. Nor did they decide whether SAFE's stops and arrests violated the Illinois Constitution, let alone the federal one.[1] *See* 89 N.E.3d at 747. Their decisions, instead, were limited to the scope of the statute, Section 3-9005(b). *Id.*; 33 N.E.3d at 1029.

### III. The Complaint's Causes of Action

Filed almost exactly two years after the appellate court decided *Ringland*, Larson's Complaint names as Defendants LaSalle County, Towne, current-State's Attorney Karen Donnelly, and John Doe SAFE officers. It claims that Larson's interaction with SAFE gives rise to four Section 1983 claims, which she brings individually and on behalf of a purported class.

Specifically, Count I asserts an unreasonable seizure, in violation of the Fourth Amendment, because Defendants "fabricat[ed] and/or exaggerat[ed]" traffic violations, and without "reasonable suspicion" or "legal justification" seized Larson and the class. (R. 28 ¶¶ 61–63.) Count II alleges an unreasonable search, also in violation of the Fourth Amendment, because Defendants searched Larson's and the class's "vehicles without probable cause, reasonable suspicion, or any other legal justification." (*Id.* ¶ 66.) Count III claims interference with the right to travel and free movement, in violation of the Fourteenth Amendment's due process protections, because Defendants' "policy to target vehicles with out-of-state license plates . . . penalize[ed] out-of-state motorist for exercising their right to travel or right to free movement." (*Id.* ¶ 68.) Count IV asserts a *Monell* claim, alleging that SAFE "carried out" *de facto* policies that resulted in the illegal stops, seizures, and searches, all to the county's profit. (*Id.* ¶ 70–79.)

The Complaint also brings an indemnification claim, pursuant to 745 ILCS 10/9-102, in Count V. In Count VI, Larson alleges unjust enrichment as "Defendants have been unjustly

---

[1] In fact, the majority in the Illinois Supreme Court did not address the dissent's statement that SAFE "conducted constitutional traffic stops." *Ringland*, 89 N.E.3d at 752.

5

enriched in retaining revenues derived from" unlawful SAFE seizures, forfeitures, and fines.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated another way, a complaint must present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Catinella v. Cnty. of Cook, Illinois*, 881 F.3d 514, 517 (7th Cir. 2018). When assessing a complaint's sufficiency, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## ANALYSIS

Defendants argue, among other things, that Larson's Section 1983 claims are untimely. Because that issue is dispositive, the Court will address only it.

"Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine, Illinois*, 875 F.3d 839, 842 (7th Cir. 2017); *see also Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) ("dismissal on statute-of-limitations grounds constitutes a dismissal for failure to state a

6

claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if the claim is indisputably time-barred"). A litigant, in other words, may plead herself "out of court" if she "pleads facts that show that [her] suit is time-barred." *Britton v. Williams*, No. 16 C 11180, 2017 WL 4410117, at *3 (N.D. Ill. Oct. 4, 2017) (quoting *Tregenza v. Great Am. Comm'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)); *see also Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006).

The parties agree that Illinois's two-year statute of limitations for personal-injury claims governs Larson's Section 1983 claims. *See* 735 ILCS 5/13-202; *see also, e.g.*, *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 494 (7th Cir. 2017). They also agree that federal law determines the appropriate accrual date. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). But they disagree on what that date is—the date SAFE stopped Larson and searched her car, or the date the appellate court issued *Ringland* more than two and half years later.

"A cause of action accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Amin Ijbara*, 860 F.3d at 493 (quoting *Wallace*, 549 U.S. at 388)); *see also Washington v. Summerville*, 127 F.3d 552, 555 (7th Cir. 1997). All that is therefore "required to start the statute of limitations running is knowledge of the injury and that the defendant or an employee of the defendant acting within the scope of his or her employment may have caused the injury." *Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017). More simply put, "a claim accrues as soon as a person knows both the fact and the cause of an injury." *Moore v. Burge*, 771 F.3d 444, 447 (7th Cir. 2014). "Importantly, the cause of action accrues even though the full extent of the injury is not then known or predictable." *Amin Ijbara*, 860 F.3d at 493 (quoting *Wallace*, 549 U.S. at 391 (quoting 1 Calvin W. Corman, Limitation of Actions § 7.4.1, 526–27 (1991))).

In the Fourth Amendment context, the general rule is clear—a "claim accrues at the time

7

of the search or seizure." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016); *Moore v. Vagnini*, 673 F. App'x 584, 585 (7th Cir. 2017) (affirming dismissal of Section 1983 unreasonable-search claim filed more than two years after search); *Liberty*, 860 F.3d at 1019 (same). In *Wallace*, for example, the Supreme Court "held that a claim asserting that a search or seizure violated the fourth amendment . . . accrues immediately." *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) (citing *Wallace*, 549 U.S. at 392–93). Courts thus routinely dismiss Section 1983 Fourth Amendment claims filed two years after the complained-of search or seizure. *See, e.g.*, *Carr v. Illinois State Police*, No. 17 C 413, 2017 WL 5989726, at *4 (N.D. Ill. Dec. 4, 2017); *Goston v. Fecarotta*, No. 17 C 6003, 2017 WL 6813698, at *3 (N.D. Ill. Nov. 16, 2017); *Blocker v. City of Chicago*, No. 17 CV 00055, 2017 WL 3278323, at *3 (N.D. Ill. Aug. 2, 2017). In the right-to-travel context, the general rule is less clear. Larson, however, does not disagree with Defendants' argument that, in this case, that claim should accrue on the same date as the Fourth Amendment claims. *See also Norwood v. City of Mendenhall, Mississippi*, No. 13-cv-580-HSO-RHW, 2015 WL 11112504, at *6 (S.D. Miss. Mar. 4, 2015) (determining that Fourth Amendment and right-to-travel claims accrued at the same time).

Applying those rules here, Larson's Section 1983 claims are time-barred. SAFE's stop, seizure, and search of Larson and the car occurred sometime in October or November 2012. Larson knew (or should have known) then that the officers lacked probable cause or justification—as she claims, she had violated no "traffic, city, state, or federal law[s]," yet the officers had put her in an unmarked vehicle, leaving her grandmother in her car, and without consent took a drug-sniffing dog around and into it. (R. 28 ¶ 28.) Larson further knew (or should have known) then that her stop, seizure, and search was the result of a policy targeting vehicles with out-of-state plates—as she pleads, the officer admitted as much in 2012, telling her

8

that the State's Attorney created his "team" and that they "look[ ] for vehicles with out-of-state license plates," like hers, "and stop[ ] them the entire day."  (*Id.* ¶ 41.)  She therefore knew (or should have known) of her injuries and their causes on that day in 2012.

To avoid that straightforward conclusion, Larson contends that she did not know and could not have known of her claims until June 2015, when the appellate court issued *Ringland*.[2]  Larson submits that *Ringland* revealed SAFE's lack of statutory authorization, but her Complaint does not allege that SAFE's lack of statutory authorization is her constitutional injury.  Instead, the Complaint alleges that SAFE officers (and by extension, Defendants) violated Larson's and the class's Fourth Amendment rights by "fabricating and/or exaggerating traffic violations," executing seizures without "reasonable suspicion" or "legal justification," and executing searches "without probable cause."  (*See* R. 28 ¶¶ 59–69.)  The Complaint also alleges that SAFE officers (again, by extension, Defendants) violated Larson's and the class's Fourteenth Amendment rights by "enforce[ing] a policy to target vehicles with out-of-state license plates" and thus "penalizing out-of-state motorists for exercising their right to travel."  (*Id.* ¶¶ 67–69.)  Whether those alleged constitutional injuries are actionable does not depend on whether SAFE officers were patrolling I-80 legally under state law at the time.  *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established"); *United States v. Janik*, 723 F.2d 537, 549 (7th Cir. 1983) (whether conduct violates the Fourth Amendment does not depend on whether officers "turned out to be

---

[2] To be sure, the Complaint alleges that Larson did not know of her Section 1983 claims until May 2017, when she met with her lawyer, but Larson's response brief takes the position that the accrual date is the issuance of *Ringland*.  Further, to the extent Larson's argument is that ignorance of the law delays accrual, the law is otherwise.  *Vagnini*, 673 F. App'x at 586 (one did "not need to know under what legal theory he had a claim, or even that he had a claim at all, to know that he had suffered harm"); *Mihelic v. Will Cnty., Illinois.*, 826 F. Supp. 2d 1104, 1112–13 (N.D. Ill. 2011) (rejecting argument that plaintiff could not have known of injury during illegal search until meeting with lawyer).

mistaken and may have exceeded . . . their authority under state law"); *accord Ochana v. Flores*, 199 F. Supp. 2d 817, 828 (N.D. Ill. 2002), *aff'd*, 347 F.3d 266 (7th Cir. 2003) (in analyzing a Fourth Amendment claim, "it is irrelevant to the constitutionality of [officer's] conduct that the arrest may have violated state or municipal law"); *Madsen v. Park City*, 6 F. Supp. 2d 938, 945 (N.D. Ill. 1998) ("even if, under state law, Leding had lacked authority to stop plaintiff and issue a citation in Waukegan, that by itself would be an insufficient basis for liability under 42 U.S.C. § 1983").

Larson's arguments miss the point. Her only treatment of whether SAFE's illicit authorization gives rise to a constitutional injury comes by way of a perfunctory assertion—"relying on the SAFE unit's false authority to conduct a search and seizure is akin to relying on a faulty warrant," she submits. (R. 40 at 4.) Yet Larson's own case proves otherwise. In *Johnson v. Garza*, officers argued that a man should have known of his Section 1983 claim when they searched his apartment, because he knew then that the search lacked probable cause. 564 F. Supp. 2d 845, 848 (N.D. Ill. July 11, 2008). The court rejected that argument, reasoning that the man had not claimed that "an absence of probable cause" was his "constitutional injury." *Id.* at 851 n. 10. Rather, his "constitutional injury" was the lack of "a valid warrant"—and "[b]asic Fourth Amendment jurisprudence teaches that a search must be supported by probable cause *and* a valid search warrant." *Id.* (emphasis in original) (citing *Katz v. United States*, 389 U.S. 347, 356–57 (1967)); *see also id.* at 851 (stating that the Fourth "Amendment is violated when state officials intentionally or recklessly submit[ ] false statements in an affidavit supporting a search warrant"); *cf. Dean v. Behrend*, No. 07-C-4383, 2007 WL 4531796, at *3 (N.D. Ill. Dec. 19, 2007). No law cited here, and none of which the Court is aware, comparably teaches that a constitutional injury occurs whenever an officer without state authority to patrol conducts a

traffic stop and search.

To the contrary, the Seventh Circuit instructs that an officer's violation of state law alone does not imply a violation of the Constitution. *See Bruce v. Guernsey*, 777 F.3d 872, 876 (7th Cir. 2015) ("the constitutionality of a seizure does not depend on the particularities of state law"); *Thompson*, 472 F.3d at 454 ("this court has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws") (citing cases); *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 434 (7th Cir. 1986) ("In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same."). Accordingly, although "officers may have exceeded their authority" in conducting a particular search or seizure, as here, "that does not mean they violated the Constitution." *McKinney v. George*, 726 F.2d 1183, 1188 (7th Cir. 1984); *see also Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 527 (7th Cir. 2001) ("A violation of a state statute is not a *per se* violation of the federal Constitution."); *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (same).

Ultimately, Larson's contention—that not until *Ringland* could she have known of her claims, because she was unaware that SAFE: (1) "was not authorized to conduct traffic stops"; (2) "targeted out-of-state motorists"; or (3) lacked "reasonable suspicion or probable cause" to search her car—does not hold up. (R. 28 ¶ 43; *see also* R. 40 at 3–6.) *Ringland* does not address the second or third topics, and in any case, the Complaint's factual allegations affirmatively plead that Larson knew SAFE targeted out-of-staters and that her stop and search lacked suspicion or cause at the time the officers pulled her over. (*Id.* ¶ 41 (alleging that an officer "told her that the team sits on I-80, looks for vehicles with out-of-state license plates, and stops them the entire day"); *id.* ¶ 28 (alleging that she had not violated any laws when she was pulled over).)

11

As to the first point, even if *Ringland* was Larson's first indication that SAFE was not authorized to conduct traffic stops, the Complaint does not allege that such illegitimate authorization gives rise to a constitutional injury.

The Court therefore dismisses Larson's Section 1983 claims, Counts I through IV,[3] with prejudice. As a result, the Court lacks subject-matter jurisdiction, and thus declines to exercise supplemental jurisdiction over Larson's state-law claims. 28 U.S.C. § 1367(c)(3); (R. 28 ¶ 14 ("Jurisdiction for Plaintiff's state claims are based on supplemental jurisdiction")). The Court dismisses those claims, Counts V and VI, without prejudice. *See Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisconsin, Inc.*, 657 F.3d 496, 505 (7th Cir. 2011) ("it is the well-established that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial").

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Rule 12(b)(6) motion to dismiss and dismisses the First Amended Class Action Complaint.

**Dated: March 5, 2018**     **ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**

---

[3] Larson does not dispute Defendants' argument that, if Counts I through III are dismissed, so must Count IV, the *Monell* claim, as there is no underlying, actionable constitutional violation. *See also Scott v. Chicago Police Dep't*, No. 14 C 6657, 2015 WL 394360, at *4 (N.D. Ill. Jan. 29, 2015), *aff'd sub nom. Scott v. City of Chicago*, 619 F. App'x 548 (7th Cir. 2015) ("Scott's *Monell* claim can only go forward to the extent that it is based on claims that have been timely filed").